# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Edward Daigle et al.,

     Plaintiffs,

v.

Ford Motor Company,

     Defendant.

MEMORANDUM OPINION
AND ORDER
Civil No. 09-3214 (MJD/RLE)

_____

     Robert K. Shelquist, Craig S. Davis and Matthew B. Johnson, Lockridge Grindal Nauen P.L.L.P and Jay P. Saltzman, Law Offices of Jay Saltzman P.C., Counsel for Plaintiffs.

     Jennifer K. Huelskoetter, David R. Kelly, Michael R. Carey, Bowman and Brooke LLP and John M. Thomas and Thomas J. Palazzolo, Bryan Cave LLP.

_____

     This matter is before the Court upon Defendant Ford Motor Company's

("Ford") motion to strike class allegations and to dismiss the claims of the

individually named Plaintiffs pursuant to Federal Rule of Civil Procedure

12(b)(6).

## BACKGROUND

     Plaintiffs Rex Lindsay, James Genovese, Henri Caron, Sylvester Hobbs,

and Edward Daigle are owners of Ford Freestar minivans that have experienced

a transmission failure.  (Compl. ¶¶ 14, 18, 29, 34, 38.)  Plaintiffs allege that the failures are caused by a design defect in the vehicles' torque converter, a component that acts as a bridge between the engine and the transmission.  (<u>Id.</u> ¶ 58.)  The torque converter connects to the transmission through a shaft with grooved ends, called "splines."  (<u>Id.</u> ¶ 59.)  If the torque converter fails, the splines may strip and the connection between the engine and the transmission is lost.  (<u>Id.</u> ¶ 63.)  When this connection is lost, the vehicle loses propulsion.  (<u>Id.</u> ¶ 2.)  Each Plaintiff alleges that the splines on their vehicles stripped, causing their transmissions to fail.  (<u>Id.</u> ¶ 2.)

Plaintiffs bring this action on behalf of all who own or lease Ford Freestar or Mercury Monterey minivans from the 2004, 2005, and 2006 model years.  (<u>Id.</u> ¶ 2.)  Both the Freestar and Monterey are built in the same factory and use the same design platform.  (<u>Id.</u> ¶ 54.)

Plaintiffs commenced this putative class action suit on November 17, 2009.  Their Complaint alleges six claims against Ford: breach of an express warranty, breach of an implied warranty, unjust enrichment, breach of a duty of good faith and fair dealing, strict liability for a product defect, and negligence.  Ford has moved to dismiss all claims of the named Plaintiffs pursuant to Fed. R. Civ. P.

12(b)(6).  All parties agree that Minnesota law is applicable to this motion.

**MOTION TO DISMISS**

Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  This requirement has been interpreted to require enough information to give the defendant fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).  Although detailed factual allegations are not needed, Rule 8(a)(2) requires more than a formulaic recitation of the elements of a cause of action.  Id.  Moreover, a claim must contain enough factual content to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

A court proceeds through its analysis of a Rule 12(b)(6) motion by accepting "as true all of the factual allegations contained in the complaint, and review[ing] the complaint to determine whether its allegations show that the pleader is entitled to relief."  Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 572)).

**ANALYSIS**

I.      UCC-Based Contract Claims

A.      Express Warranty Claim

Under Minnesota law, an express warranty arises when a seller makes an affirmation about a product that becomes part of the basis of the bargain between the parties.  Minn. Stat. Ann. § 336.2-313 (West 2010).  "To establish a warranty claim the plaintiff must basically prove: the existence of a warranty, a breach, and a causal link between the breach and the alleged harm."  Peterson v. Bendix Home Sys., Inc., 318 N.W.2d 50, 52-3 (Minn. 1982).  Ford argues that the express warranty claim should be dismissed because Plaintiffs have failed to allege that any of the buyers saw or were aware of a representation about the product that became a basis of the bargain.  Plaintiffs respond that when enacting the Uniform Commercial Code ("UCC"), Minnesota abandoned a reliance requirement for an express warranty claim.  Moreover, even if a reliance requirement still exists, Plaintiffs contend their express warranty claim passes muster because they have alleged that each plaintiff relied on representations contained within Ford's advertising when purchasing their vehicles.

Both parties conflate the basis-of-the-bargain concept with the reliance concept. Ford argues that Plaintiffs fail to allege any representation that became part of the basis of the bargain or made any claim upon which the Plaintiffs relied. Plaintiffs argue that a showing of reliance is not required in Minnesota, but fail to address whether basis-of-the-bargain must be alleged.

Some courts in this district have held that an allegation of fact that is part of the basis of the bargain is essential to a claim brought under Minn. Stat. § 336.2-313(1)(a). See, e.g., Riley v. Cordis Corp., 625 F. Supp.2d 769, 788 (D. Minn. 2009). The Eighth Circuit has held, with regard to a common law warranty claim, that reliance and basis-of-the-bargain allegations are almost indistinguishable and one or the other is required. Hendricks v. Callahan, 972 F.2d 190, 193-94 (8th Cir. 1992). The court noted, however, that it was not convinced Minnesota has completely abandoned the requirement of reliance with respect to a breach of warranty claim under the Uniform Commercial Code. Id. at 193. And other courts have held that a reliance requirement has been abandoned in Minnesota and needs not be pled. See, e.g., Drobnak v. Andersen Corp., Civ. No. 07-2249, 2008 WL 80632, at *7 (D. Minn. Jan. 8, 2008) aff'd 561 F.3d 778 (8th Cir. 2009). Whatever the distinction between "reliance" and "basis of the bargain," a plain

reading of the statute requires that the bargain be based on a representation made by the seller.  Therefore, this Court's inquiry should consider whether Plaintiff has alleged that Ford made representations that caused an express warranty to form.

Plaintiffs allege that Ford, "through its authorized dealers, agents and marketing materials" warranted that the vehicles were merchantable and fit for ordinary purposes of use.  (Compl. ¶ 75.)  This allegation rises beyond a mere recitation of the elements of the claim and describes with specificity possible sources of representation upon which the vehicle buyers may rely.  Accordingly, Ford's motion to dismiss the express warranty claims on the basis that Plaintiffs failed to allege they were aware of a representation that became a basis for the bargain will be denied.

### B.     Implied Warranty Claim

Under Minnesota law, an implied warranty of merchantability requires that goods be "fit for the ordinary purposes for which such goods are used." Minn. Stat. § 336.2-314(2)(c) (West 2010).  "This warranty is breached when the product is defective to a normal buyer making ordinary use of the product." Carey v. Chapparal Boats, Inc., 514 F. Supp.2d 1152, 1156 (D. Minn. 2007) (citing

Peterson, 318 N.W.2d at 52-3)).

Ford argues that the claim should be dismissed because all cars are built with components that break down over time.  According to Ford, the fact that Plaintiffs allege with technical specificity which part of the car is malfunctioning does not mean that the part becomes exempt from the normal degradation that comes with age and use.  Plaintiffs assert that a merchantable minivan is one that is fit for the usual purpose of transportation, for which Plaintiffs and class members paid a considerable sum of money.

"The question when the warranty is imposed turns basically on the meaning of the terms of the agreement as recognized in the trade."  Minn. Stat. Ann. § 336.2-314 at UCC cmt. 2 (2002).  Plaintiffs do not allege whether the vehicles were under a manufacturer's warranty or how many miles were on the vehicles.  However, they do allege the age of the vehicles.  (Compl. ¶¶ 14, 19, 29, 34, 38.)  All of the vehicles are model year 2004 or 2005, and each of the vehicles is alleged to have had its transmission fail by the end of 2009. Arguably, a vehicle that suffers a major, systemic malfunction within five years of purchase—even with rigorous driving—may not be "fit" within the meaning of the implied warranty statute.  The Court thus finds that Plaintiffs' have stated a claim for

breach of implied warranty.

C.    Warranty Claims of Plaintiffs Hobbs and Lindsay

Ford argues that the express and implied warranty claims of Plaintiffs Sylvester Hobbs and Rex Lindsay should be dismissed because the complaint fails to allege that either of these plaintiffs notified Ford or an authorized dealer of the transmission failures.  Under Minnesota law, "the buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  Minn. Stat § 336.2-607 (West 2010).

Plaintiffs contend that, for two reasons, Ford waived the notice requirement of Section 336.2-607.  First, the purposes of the notice requirement have been met and, as a consequence, specific notice was not required.  Second, because Ford chose to deny that there was anything defective about its vehicles after James Genovese complained about his transmission problems, Ford indicated through its actions that it would be futile for other plaintiffs to complain about their transmissions.

"[A] plaintiff in a breach of warranty case is precluded from recovery if he does not plead and prove the giving of notice within a reasonable time under

Minn. St. 512.49." Truesdale v. Friedman, 132 N.W.2d 854, 865 (Minn. 1965)

(citing the statutory language of the Uniform Sales Act, which was replaced by

the current Uniform Commercial Code language).

The Eighth Circuit has held that the "notice which satisfies [Section 336.2-

607(3)(a)] need only be such that informs the seller that the transaction is

troublesome and needs to be watched." Northern States Power Co. v. ITT Meyer

Industries, 777 F.2d 405, 408 (8th Cir. 1985). And, while the Eighth Circuit

acknowledges that the bar for sufficiency of notice is low, specific notice of a

complaint to the manufacturer is required. See, e.g., Drobnak, 561 F.3d at 785-6

(8th Cir. 2009); Christian v. Sony Corp. of Am., 152 F. Supp. 2d 1184, 1188 n.2 (D.

Minn. 2001).

> The notice "of the breach" required is not of the facts, which the seller
> presumably knows quite as well as, if not better than, the buyer, but of
> buyer's claim that they constitute a breach. The purpose of the notice is to
> advise the seller that he must meet a claim for damages, as to which,
> rightly or wrongly, the law requires that he shall have early warning.

Drobnak, 561 F.3d at 785 (quoting Am. Mfg. Co. v. U.S. Hipping Bd. Emergency

Corp., 7 F.2d 565, 566 (2nd Cir. 1925)).

Neither Hobbs nor Lindsay are alleged to have made any contact with

Ford or an authorized dealer before filing suit. Hobbs had his vehicle towed to a

transmission repair shop in Hempstead, Texas.  When he learned that the cost of the repairs would be over $2,000, he had the car towed to a friend's house where it remains unrepaired.  (Compl. ¶ 36.)  The Complaint does not allege what steps Lindsay took with the vehicle after a transmission specialist diagnosed the sheared splines of the torque converter. (Id. ¶ 40.)  Because neither Hobbs nor Lindsay alleged having made any contact with Ford or its agents before filing this suit, and thus deprived Ford of the opportunity to cure the alleged defect or otherwise negotiate the claim, their warranty claims must be dismissed.

     D.     Common Law Contract Claims

          1.     Unjust Enrichment Claim

Ford argues that the unjust enrichment claims of the named Plaintiffs should be dismissed because they have other legal remedies available to them. Drobnak, 561 F.3d at 786.  To establish an unjust enrichment claim, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant "in equity and good conscience" should pay. Klass v. Twin City Fed. Sav. & Loan Ass'n., 190 N.W.2d 493, 494-95 (Minn. 1971) (quoting Brand v. Williams, 13 N.W. 42, 42 (Minn. 1882).  To prevail on the claim, a party must show that it was unjustly enriched in the sense that the term

10

'unjustly' could mean illegally or unlawfully." <u>First Nat'l Bank v. Ramier</u>, 311

N.W.2d 502 (Minn. 1981).   However, a claim for equitable relief may only stand

when no other legal remedies are available to the plaintiffs.  <u>Drobnak</u>, 561 F.3d at

787 (listing cases).

The Complaint alleges that each of the Plaintiffs would have insisted on

paying a lower price or would not have purchased their vehicles at all had they

known of the alleged defects.  (Compl. ¶ 88.)  Additionally, Ford is alleged to

have profited by selling transmission repair parts and services that otherwise

would have been covered by a warranty.  (<u>Id.</u> ¶ 89.)  However, the warranty-

based claims of the named Plaintiffs provide a legal remedy to them and,

pursuant to <u>Drobnak</u>, militate against their unjust enrichment claim.  The

Plaintiffs seek certain equitable remedies from this Court, including an order

requiring Ford to issue notifications, recall, inspect, and repair damaged vehicles.

(Compl. Prayer for Relief (e).)

The Court will permit simultaneous pleading of the breach of warranty

and unjust enrichment claims on the grounds that, under Federal Rule of Civil

Procedure 8(d), a party is permitted to plead in the alternative.  <u>See, e.g.</u>, <u>LePage</u>

<u>v. Blue Cross & Blue Shield of Minnesota</u>, Civ. No. 08-584 (RHK/JSM), 2008 WL

2570815, at *8 (D. Minn. June 25, 2008) (rejecting defendant's claim that plaintiff cannot plead unjust enrichment because she had an adequate legal remedy under the FLSA because "a party may plead alternative theories of relief under both legal and equitable grounds") (citing Fed. R. Civ. P. 8(d)(2)).  The motion to dismiss the unjust enrichment claims are therefore denied.[1]

2.    Good Faith and Fair Dealing Claim

"Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995).  This implied covenant does not extend to actions beyond the scope of the contract.  Id.  Minnesota courts also construe this covenant narrowly, recognizing a breach where "one party has an ulterior motive for fulfilling a condition precedent to a contract or a party does not use good faith in exercising an unlimited discretionary power over a term of the contract." Todd County v. Barlow Projects, Inc., Civ. No. 04-4218, 2005 WL 1115479, at *13 (D. Minn. May 11, 2005) (citing In re Hennepin

_____

[1]Drobnak is distinguishable from this case, as all claims therein were dismissed.  Here, however, Plaintiffs' breach of warranty claims are still viable.  Therefore, alternative pleading is appropriate where Plaintiffs may eventually fail on the merits of their warranty claims.

County, 504 N.W.2d at 502; White Stone Partners, LP v. Piper Jaffray Cos., 978 F. Supp. 878, 882 (D. Minn. 1997)).

In their Complaint, Plaintiffs allege that each contract for sale entered into by Plaintiffs for the purchase of a class vehicle contains an implied term requiring Ford to adhere to a duty of good faith and fair dealing. (Compl. ¶ 92.) Plaintiffs further allege that Ford breached this covenant of good faith and fair dealing by failing to notify Plaintiffs of the defects in the torque converters and by failing to fully and properly repair the defects and resulting damage to their cars. (Id. ¶ 93.)

Ford argues that this claim fails because no contract between Ford and the Plaintiffs was alleged. Ford also argues that even if Plaintiffs had alleged the existence of such a contract, it would be a sales contract that is not subject to the implied covenant. Plaintiffs contend that they have properly alleged a contract for the purchase or lease of a class vehicle. Although such contract was not entered into by Ford, the privity requirement has been abandoned in product liability claims. Plaintiffs further argue that they have alleged that plaintiffs Daigle and Genovese had dealings with Ford dealers after their transmissions broke down, and that these contacts were sufficient for contracts to form

concerning the repair of the transmission with the implied covenant.

The Court finds that Plaintiffs have not sufficiently alleged an underlying contract between them and Ford to serve as a basis for a claim for breach of implied duty of good faith and fair dealing. Contrary to Plaintiffs' contention, the allegations that Plaintiff Daigle spent $3,000 to repair his transmission at a Ford dealership, or that Plaintiff Genovese had "dealings" with a local Ford dealer, are not sufficient to establish a contract between those Plaintiffs and Ford Motor Company. It is not enough to suggest that the Court can infer that Ford was involved in the repair and/or replacement of the their transmissions. Plaintiffs must allege facts demonstrating that Ford was involved. See Twombly, 550 U.S. at 555.

It is true, as Plaintiffs contend, that Minnesota does not have a privity requirement with respect to breach-of-warranty claims. See Peterson, 318 N.W.2d at 52; Schubert v. J.R. Clark Co., 49 Minn. 331, 338, 51 N.W. 1103, 1105 (Minn. 1892). However, no Minnesota case has extended this privity exemption to claims of a breach of good faith and fair dealing. As noted above, Minnesota law recognizes an implied covenant of good faith and fair dealing *between the parties to a contract.* In re Hennepin County, 504 N.W.2d at 502 (emphasis added).

14

Because Plaintiffs have not alleged a contract between them and Ford, their breach of good faith and fair dealing claims must be dismissed.

E.     Tort Claims

Ford argues that Plaintiffs' strict liability and negligence claims should be dismissed because they are barred by the economic loss doctrine.  Under Minnesota law, a buyer may not bring a product defect tort claim for compensatory damages unless the defect "caused harm to the buyer's tangible personal property other than the goods or the buyer's real property."  Minn. Stat. § 604.101, subd. 3 (2010).  There is no bar against claims for an injury to a person, however.  Id. at subd. 2.

Plaintiffs contend that because their claims involve a product defect that creates a substantial and unreasonable risk of personal injury or death, an exception to the economic loss doctrine applies here.  In support, Plaintiffs cite the Court to a 1992 asbestos-abatement case involving the IDS Center.  80 South Eighth St. Ltd. P'ship. v. Carey-Canada, Inc., 486 N.W.2d 393 (Minn. 1992), amended by 492 N.W.2d 256.  There, the court held that the economic loss doctrine did not operate to bar tort claims for asbestos abatement, because the claims was not that the product failed to perform, but rather that the product was

inherently dangerous to humans.  Id. at 397.

Ford argues that 80 South Eighth St. is limited to asbestos-abatement cases.

Moreover, Ford argues that the Legislature passed Minn. Stat. § 604.101 in 2000,

eight years after 80 South Eighth St. was decided.  Despite that decision, the

Legislature did not include a statutory exception for product defect claims for

allegedly dangerous products that have not yet caused a personal injury.

The Court agrees that 80 South Eighth St. is not applicable here.  Plaintiffs

claim is that Ford manufactured a defective part for the cars they purchased, and

are now seeking "enforcement of the bargain regarding the [torque converter]

performance."  Id. at 397.  While Plaintiffs now argue that several of the

transmission failures occurred in situations where the risks of a dangerous

accident were high, none of the named Plaintiffs have suffered any personal

injury or damage to real property as a consequence of their vehicles breaking

down.  As a result, Plaintiffs tort claims are barred by state law.  Minn. Stat. §

604.101.

**MOTION TO STRIKE CLASS ALLEGATIONS**

Plaintiffs filed this putative class action on November 17, 2009.  Rather

than file an answer, Ford filed a motion to dismiss the claims of the individually

named plaintiffs and a motion to strike the class allegations. Ford admits that generally, motions to strike class allegations at this stage of the proceedings would most likely be denied as premature. Ford argues, however, that this case is different because the relevant case law does not support certification of the requested nationwide class action.

Plaintiffs filed this action on behalf of themselves and other similarly situated persons that currently own or lease a Ford Freestar or Mercury Monterey for model years 2004 through and including 2006. (Comp. ¶ 44.) It is Plaintiff's claim that the torque converter in these vehicles is defectively designed and causes the car to experience a sudden loss of propulsion as a result of such design defect. (Id. ¶ 48.) Ford argues that under controlling Eighth Circuit law, a plaintiff cannot recover under any of the theories alleged in the complaint unless they each prove that they experienced problems with their vehicles and that those problems were caused by the allegedly defective torque converter. A class member whose vehicle is performing properly cannot recover under the claims alleged. No amount of discovery on any topic will change the result.

The named Plaintiffs do allege that they experienced a loss of propulsion due to the defect of the torque converter and as a result had to pay, or will have

to pay, to repair or replace the torque converter and the transmission.  The class definition is not limited, however, to owners or lessees of the subject cars that have experienced problems with a defective torque converter.

**STANDARD UNDER RULE 12(f)**

Rule 12(f) of the Federal Rules of Civil Procedure provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  The Eighth Circuit views such motions with disfavor, however.  Stanbury Law Firm, P.A. v. Internal Revenue Serv., 221 F.3d 1059, 1063 (8th Cir. 2000).  A motion to strike may be appropriate if the result is to make a trial less complicated or otherwise streamline the ultimate resolution of the action.  Rios v. State Farm Fire and Cas. Co., 469 F. Supp.2d 727, 733 (S.D. Iowa 2007).

Ford argues that pursuant to Rules 23(c)(1)(A) and 23(d)(1)(D) and Rule 23 (f), the Court may strike class allegations prior to discovery where on the face of the complaint it is clear that a class action cannot be maintained.  Hovsepian v. Apple, Inc., No. 08-5788, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009); Sanders v. Apple, Inc., 672 F. Supp.2d 978, 990-91 (N.D. Cal. Jan. 21, 2009).  See also Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982) ("Sometimes

the issues are plain enough from the pleadings . . . and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.")

Ford argues that Plaintiffs seek to certify a class pursuant to Rule 23(b)(3), which provides for the maintenance of an action as a class action where there are common questions of law or fact common to the members that predominate over any individual issues, and where a class action is superior to any other available methods for fairly and efficiently adjudicating the controversy.  Ford argues that the class Plaintiffs seek to certify does not meet the predominance requirement because fundamental elements of Plaintiffs' claims - injury and causation - will be based on individualized proof.

It is Ford's position that the claims of most, if not all, of the purported class members in this case are governed by two Eighth Circuit decisions: <u>Briehl v. General Motors Corp.</u>, 172 F.3d 623 (8th Cir. 1999) and <u>O'Neil v. Simplicity, Inc.</u>, 574 F.3d 501 (8th Cir. 2009).  In <u>Briehl</u>, the plaintiffs sought to certify a class of persons that purchased GM vehicles that were fitted with a defective anti-lock braking system.  172 F.3d at 625.  Plaintiffs asserted a number of claims against GM and the manufacturer of the defective brakes, including breach of express

and implied warranty, fraudulent concealment and violation of the state consumer protection statutes. The district court had granted the defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6). On appeal, the Eighth Circuit affirmed the dismissal because the plaintiffs did not allege that the defect actually manifested itself in their vehicles. Because each of the claims asserted includes damages as an essential element, the claims were deemed insufficient.

In <u>O'Neil</u>, a putative class action was filed involving a crib that was marketed and sold with an allegedly defective piece of hardware that allowed the drop-side of the crib to detach from the crib, creating a gap that could cause serious injury to a child. 574 F.3d at 502. The class was defined to include all persons in Minnesota who purchased the recalled cribs, excluding those who suffered a personal injury. <u>Id.</u> at 503. The district court granted the motion to dismiss. On appeal, the Eighth Circuit again noted that a purchaser of an allegedly defective product does not have a legally recognizable claim where the defect has not manifested itself in the product purchased. As the plaintiffs did not allege that the defect manifested itself in the crib they purchased, the court held that the plaintiffs did not state a claim. <u>Id.</u>

Ford argues that in this case, the fundamental elements of injury and causation would require proof that the class member's vehicle malfunctioned and that the malfunction was caused by the alleged defect. Based on these circumstances, individual issues would predominate over common issues. See In re Canon Cameras, 237 F.R.D. 357, 359 (S.D.N.Y. 2006); Hovsepian, 2009 WL 5069144, at *6.

Plaintiffs respond that motions to strike are to be granted only on rare occasions, and when filed at the pleading stage, such motion is even less appropriate. For example, in Rios, the court held that because plaintiffs demonstrated that class discovery would produce information necessary to determine the appropriateness of a class action, it would deny the motion to strike class allegations. 469 F. Supp.2d at 741. See also, Morales v. Greater Omaha Packing Co., 2008 U.S. Dist. LEXIS 102565, at *6 (D. Neb. Dec. 15, 2008) (denying motion to strike where plaintiffs had properly stated claim for relief).

Plaintiffs argue it is improper to strike the class allegations on the basis that the current class definition includes owners of Ford Freestars and Mercury Montereys who have not experienced a problem with the torque converter because such argument delves into the merits of Plaintiffs' claims. See Kohen v.

Pacific Investment Mgmt. Co., 571 F.3d 672, 676 (7th Cir. 2009).

Plaintiffs further argue that many courts have certified classes and denied motions to dismiss where the putative class includes all owners of a particular product without requiring plaintiffs to show injury or damages.  See, e.g., McGregor v. Uponor, Inc., No. 09-1136, 2010 U.S. Dist. LEXIS 162, at *19-20 (D. Minn. Jan. 4, 2010) (distinguishing Briehl as named plaintiffs had alleged damages, and denying motion to dismiss); Hess v. Volkswagen of America, Inc., 221 P.3d 132 (Okla. Civ. App. 2009) (affirming class certification order noting that at certification stage, issue is not whether class member has sustained damage, but whether the defective product has manifested injury or whether the possibility of injury is likely or remote).

The Court finds that this case is not so unique or different that a motion to strike at the pleading stage is appropriate.  Accordingly, the Court will deny the motion to strike the class allegations, and allow discovery as to class allegations.

**IT IS HEREBY ORDERED** the Defendant's Motion to Dismiss [Doc. No. 9] is GRANTED in part and DENIED in part as follows:  The following claims are DISMISSED:  Claims 1 and 2 as to Plaintiff Hobbs and Lindsay only and Claims

4, 5 and 6.   Defendant's Motion to Strike Class Allegations [Doc. No. 13] is

DENIED.

Date:   May 10, 2010


s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court