UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Edward Daigle et al.,

     Plaintiffs,

v.

Ford Motor Company,

     Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-3214 (MJD/LIB)

_____

Robert K. Shelquist, Elizabeth R. Odette and Craig S. Davis, Lockridge Grindal Nauen P.L.L.P, Jay P. Saltzman, Law Offices of Jay Saltzman P.C., and James C. Shah, Shepard, Finkelman, Miller & Shah, LLP, Counsel for Plaintiffs.

David R. Kelly, Jennifer K. Huelskoetter and Michael R. Carey, Bowman and Brooke LLP, John M. Thomas, Dykema Gossett PLLC and Janet L. Conigliaro, LeClair Ryan, Counsel for Defendant Ford Motor Company.

_____

This matter is before the Court upon Defendant Ford Motor Company's ("Ford") motion for summary judgment [Doc. No. 64] and Plaintiffs' motion for class certification [Doc. No. 73].

## I.   BACKGROUND

Plaintiffs James Genovese, Henri Caron, and Edward Daigle are owners of Ford Freestar minivans that have experienced a transmission failure.  Plaintiffs

1

allege that the failures are caused by a design defect in the vehicles' torque converter, a component that acts as a bridge between the engine and the transmission. The torque converter connects to the transmission through a shaft with grooved ends called "splines." If the torque converter fails, the splines may strip and the connection between the engine and the transmission is lost. When this connection is lost, the vehicle loses propulsion. Each Plaintiff alleges that the splines on their vehicles stripped, causing their transmissions to fail.

Plaintiffs bring this action on behalf of all who own or lease Ford Freestar or Mercury Monterey minivans from the 2004, 2005, and 2006 model years. Both the Freestar and Monterey were built in the same factory and used the same design platform. Plaintiffs seek compensatory damages, costs incurred in this action as well as costs for parts and repairs and consequential damages, injunctive relief and an order requiring Ford to account and/or pay damages for unjust enrichment.

Ford moves for summary judgment as to the claims remaining in this case: breach of express and implied warranties and unjust enrichment. Plaintiffs also move to certify subclasses in Minnesota, Florida and Maryland - the states of residence of the remaining named plaintiffs.

After these motions were filed, Ford notified the National Highway Traffic Safety Administration ("NHTSA") that it would recall 2004-2005 Freestars and Montereys ("covered vehicles") to address the potential for torque converter malfunctions.  (Case Declaration ¶ 3, Ex. A.)  Pursuant to the recall, owners of the covered vehicles would be notified of the recall, and instructed to take their covered vehicle to a dealer to have a new or remanufactured torque converter installed.  (Id.)  Ford's general recall policy also provides that Ford would refund the owner for costs paid to service the covered vehicle to remedy the defect or noncompliances prior to notification of the recall.  (Id., Ex. C.)

## II.   CLASS CERTIFICATION

### A.   Rule 23(a) Requirements

The class action serves to conserve "the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."  General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 155 (1982)).

Pursuant to Rule 23(a), there are four threshold requirements to class certification:

1) the class is so numerous that joinder of all members is impracticable; 2)

there are questions of law or fact common to the class; 3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

If these prerequisites are met, the Court must then determine if the putative class is maintainable under Rule 23(b).  Plaintiffs bear the burden of proof regarding the Rule 23 requirements.  Smith v. Merchants & Farmers Bank, 574 F.2d 982, 983 (8th Cir. 1978).  The district courts are accorded broad discretion in determining whether or not to certify a class.  Gilbert v. City of Little Rock, Ark., 722 F.2d 1390, 1399 (8th Cir. 1983).

Plaintiffs seek to certify the following subclasses:

Minnesota Subclass:

All current and former owners and lessees of model year 2004 through 2006 Freestar or Mercury Monterey vehicles (the "Class Vehicles") purchased or leased in Minnesota.  Excluded from the Minnesota Subclass are claims for personal injury by members of the Minnesota Subclass.  Also excluded from the Minnesota Subclass is Defendant, its parents, subsidiaries, affiliates, agents and representatives, including its registered dealers and its officers and directors at all relevant times, members of its immediate families and its legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

Maryland Subclass:

All current and former owners and lessees of the Class Vehicles purchased or leased in Maryland.  Excluded from the Maryland Subclass are claims for personal injury by members of the Maryland Subclass.  Also excluded from the Maryland Subclass is Defendant, its parents, subsidiaries, affiliates, agents and representatives, including its registered dealers and its officers and directors at all relevant times, members of its immediate families and its legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

Florida Subclass:

All current and former owners and lessees of the Class Vehicles purchased or leased in Florida.  Excluded from the Florida Subclass are claims for personal injury by members of the Florida Subclass.  Also excluded from the Florida Subclass is Defendant, its parents, subsidiaries, affiliates, agents and representatives, including its registered dealers and its officers and directors at all relevant times, members of its immediate families and its legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.

Assuming without deciding that Plaintiffs can establish that the Rule 23(a) prerequisites are met, the Court must nonetheless deny the motion for class certification as Plaintiffs cannot demonstrate that this action is an appropriate class action under Rule 23(b)(3) as discussed below.

## C.     23(b)(3) Requirements

Plaintiffs move to certify a class under Rule 23(b)(3), which allows for class certification when "questions of law or fact common to the members of the class

5

predominate over any questions affecting only individual members and that a

class action is superior to other available methods for the fair and efficient

adjudication of the controversy."

### 1.     Whether Common Questions of Law or Fact Predominate

### a.     Breach of Express Warranty

Plaintiffs assert that all of the Class Vehicles were covered by a New

Vehicle Warranty.  (Shelquist Aff., Exs. 5-7.)   Each New Vehicle Warranty

provided for a warranty start date, which "is the day you take delivery of your

new vehicle or the day it is first put into service."  (Id. at 2.)   The warranty

further provides that "Bumper to Bumper" coverage begins on the warranty start

date and ends after "three years or 36,000 miles, whichever occurs first."  (Id. at

5.)  Because the express warranty upon which Plaintiffs' rely is limited, whether

this warranty was in effect for each class member requires individual proof.  The

Court thus finds this claim is not appropriate for class certification under Rule 23

(b).

### b.     Breach of Implied Warranty

Plaintiffs assert that under Minnesota and Maryland law[1], claims for

breach of implied warranty can be proven with common evidence.

### i.      Minnesota Law

Under Minnesota law, a claim for breach of implied warranty of

merchantability requires proof that a product is not suitable for ordinary

purposes.  Minn. Stat. § 336.2-314.  Minnesota law also provides that an implied

warranty of merchantability may be limited or disclaimed, as long as the

disclaimer is in writing, conspicuous and mentions merchantability.  Transp.

Corp. of Am., Inc. v. Int'l Bus. Mach. Corp., Inc., 30 F.3d 953, 958-59 (8th Cir.

1994) (citing Minn. Stat. § 336.2-316).  In addition, such limitations are enforceable

against subsequent buyers.  Id. (citing Minn. Stat. § 336.2-318).

Here, the New Vehicle Warranty includes the following language:

You may have some implied warranties.  For example, you may have:
- an implied warranty of merchantability (that the car or light truck is reasonably fit for the general purpose for which it was sold); or
- an implied warranty of fitness for a particular purpose (that the car or light truck is suitable for your special purposes.)

These implied warranties are limited, to the extent allowed by law, to the time period covered by the written warranties, or to the applicable time period provided by state law, whichever period is shorter.

---

[1]In their briefs filed in support of class certification, Plaintiffs do not address a breach of implied warranty claim under Florida law.

(See, e.g., Shelquist Aff., Ex. 5 p. 4.)

Based on this language, it is clear that a claim of breach of implied warranty under Minnesota law would be limited to the life of the New Vehicle Warranty.  Thus, whether a class member can prove a claim for breach of implied warranty will depend on when the class member purchased the vehicle, or the mileage on the vehicle at the time of purchase.  Because such a claim can only be proven by individualized proof, it is not amenable to class certification.

In addition, a claim of breach of implied warranty is subject to a four year statute of limitations in Minnesota.  Highway Sales, Inc. v. Blue Bird Corp., 559 F.3d 782, 788 (8th Cir. 2009) (citing Minn. Stat. § 336.2-725(1)).  "Unlike express warranties, under Minnesota law, '[i]mplied warranties cannot, by their very nature, explicitly extend to future performance.'" Id.  "A breach of implied warranty occurs, and the claim accrues, 'when tender of delivery is made. . .'" unless there is a basis for equitable tolling.  Id. (quoting Minn. Stat. § 336.2-725(2)).  Individualized proof will therefore be needed to resolve the issue of whether a claim is time-barred.

### ii.    Maryland Law

Maryland law provides that a warranty of merchantability is implied in a

contract of sale from a merchant seller.  Md. Code, Comm. Law art. § 2-314.

Maryland law further provides that goods must be fit for the ordinary purposes

for which such goods are used.  Id. § 2-314(2)(c).  To sustain a claim for breach of

an implied warranty, a plaintiff must sufficiently allege objective facts as to the

likelihood of injury.  Lloyd v. Gen. Motors Corp., 916 A.2d 257, 292 (Md. 2002).

In Lloyd, for example, the court found that the plaintiffs alleged that a significant

number of persons had been injured or harmed as a result of the product defect,

and that based on these allegations, plaintiffs had sufficiently pleaded a claim,

without requiring the additional allegations that each plaintiff had, in fact, been

injured.  In doing so, the court noted that where the injury alleged is purely

speculative or nothing more than a potential, an allegation of actual injury would

be required.  Id.

Here, Plaintiffs do not allege that the defect to the torque converter has

manifested in a significant amount of Class Vehicles sold in Maryland.

Accordingly, to succeed on a claim of breach of implied warranty, a class

member would have to demonstrate that his/her Class Vehicle included a

defective torque converter.

In Maryland, claims for breach of an implied warranty are also subject to a

four year statute of limitation.  <u>See</u> Md. Code, Comm. Law art. § 2-725(1) and (2).

Such a claim accrues at tender of delivery, even if the goods are nonconforming.

<u>See</u> <u>Washington Freightliner, Inc. v. Shantytown Pier, Inc.</u>, 719 A.2d 541, 545 (Md.

1998) (statute of limitation for breach of implied warranty accrues at tender of

delivery of nonconforming goods).

Because a claim of breach of implied warranty under Maryland law

requires individualized proof, adjudication of such claims class certification is

not warranted.

### c.    Unjust Enrichment

Plaintiffs assert that under Florida, Minnesota and Maryland law, class-

wide issues predominate claims for unjust enrichment.  Plaintiffs argue that in

analyzing such a claim, the focus is on Ford's conduct.  Here, Ford received the

benefit of the purchase of a Class Vehicle at a higher price than would have been

paid had Plaintiffs known of the PDI defect.

Under the laws of Florida, Minnesota and Maryland, an unjust enrichment

claim involves a circumstance where a defendant has been conferred a benefit,

and under the circumstances, it is inequitable for the defendant to retain such

benefit.  <u>See</u> <u>Nautica Int'l, Inc. v. Intermarine USA, L.P.</u>, 5 F. Supp. 2d 1333, 1341-

10

42 (S.D. Fla. 1998) (under Florida law, elements of an unjust enrichment claim

include a benefit conferred on the defendant; appreciation by the defendant of

such benefit; and acceptance and retention of such benefit by the defendant

under such circumstances that it would be inequitable for the defendant to retain

the benefit without paying value); Klass v. Twin City Fed. Sav. & Loan Ass'n.,

190 N.W.2d 493, 494-95 (Minn. 1971) (quoting Brand v. Williams, 13 N.W. 42, 42

(Minn. 1882)) (under Minnesota law, an unjust enrichment claim exists where the

defendant has knowingly received or obtained something of value for which the

defendant "in equity and good conscience" should pay); County Comm'rs of

Caroline County v. J. Roland Dashiell & Sons, Inc., 747 A.2d 600, 607, n.7 (Md.

2000) (under Maryland law, the elements of an unjust enrichment claim under

Maryland law are: a benefit conferred upon the defendant by plaintiff; an

appreciation or knowledge by the defendant of such benefit; and that acceptance

or retention of such benefit would be inequitable).

The Court finds that the elements of an unjust enrichment claim cannot be

proven through class-wide evidence.  See Vega v. T-Mobile USA, Inc., 564 F.3d

1256, 1274 (11th Cir. 2009) (finding that "common questions will rarely, if ever,

predominate an unjust enrichment claim, the resolution of which turns on

individualized facts."). For example, the subclasses currently include all owners or lessees of the Class Vehicles, irregardless of whether the vehicle was purchased new or used. If the Class Vehicle had been purchased used, no benefit would have been conferred to Ford. Further, while Plaintiffs allege that Ford received the benefit of a higher sale price, Plaintiffs have produced no evidence to support his assertion.

The Court thus finds that common issues of law or fact do not predominate the unjust enrichment claims.

### 2.      Superiority

This factor requires the Court to determine whether the class action is manageable, taking into consideration choice of law determinations, <u>Erie</u> guesses, and notice to class members. <u>Castano v. Am. Tobacco Co.,</u> 84 F.3d 734, 747 (5th Cir. 1996). The Court can also take into consideration factors such as the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, the desirability or undesirability of concentrating the litigation of the claim in the particular forum, and the difficulties likely to be encountered in the management

of the action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiffs assert these factors weigh in favor of certification, given the

relatively low amount of loss to each class member compared to the cost and

expense of litigating this case.  Concentrating the litigation will provide a remedy

for those class members who would otherwise not seek a remedy due to the

costs/benefits.  There has also been only minimal litigation against Ford on the

issue of the defective torque converters in the Class Vehicles.

Because the Court finds that individual issues predominate, a class action

is not a superior method to adjudicate the claims asserted herein.  In addition,

Ford's voluntary safety recall of 2004-05[2] Freestars and Montereys, which

provides for the installation of a new or remanufactured torque converter, or a

refund to those who paid to service their vehicle prior to the recall, provides most

of the putative class the relief it seeks.  Under these circumstances, a class action

does not appear to be a superior method to adjudicate the putative class claims.

See, eg., In re Conagra Peanut Butter Prod. Liab. Litig., 251 F.R.D 689, 699 (N.D.

Ga. 2008) (finding that class action did not meet superiority requirements

---

[2]The putative class as defined in the Complaint includes persons who purchased or leased a 2006 Freestar or Monterey, while the recall involves only 2004 and 2005 models. However, at this time, a subclass involving owners or lessees of 2006 models cannot go forward as there is no named class representative that purchased or leased a 2006 model.

because, in part, defendant had instituted a full refund program); In re PPA Prod.

Liab. Litig., 214 F.R.D. 614, 622 (W.D. Wash. 2003) (finding that because

defendants maintained an ongoing refund and product replacement program, it

made little sense to certify a class "where class mechanism is unnecessary to

afford the class members redress."); Berley v. Dreyfuss & Co., 43 F.R.D. 397, 399

(D. N.Y. 1967) (finding that rules governing class certification "reflect a broad

policy of economy in the use of society's difference-setting machinery" and that

fact that defendant "offered to refund the purchase price to its customers,

certifying a class would needlessly replace a simple, amicable settlement

procedure with complicated, protracted litigation."); Ford Motor Co. v. Magill,

698 So.2d 1244, 1245-46 (Fla. App. 3 Dist. 1997) (reversing class certification order

as to a recall and economic injury subclass based on fact that the NHTSA had

negotiated recall mandates and extended warranties with Ford); Aqua Dots Prod.

Liab. Litig., 654 F.3d 748 (7th Cir. 2011) (finding that where defendant had

already agreed to refund the purchase price of the alleged defective product, Rule

23(a)(4), which requires class representative to fairly and adequately represent

the interests of the class, is not met if the relief plaintiffs seek duplicates a remedy

that has been offered through the refund program and which remains available

14

to all members of the putative class).

Ford does acknowledge that there may be class members that paid to have the entire transmission replaced, and who may not be fully reimbursed because replacement of the entire transmission is not required to repair the defective torque converter.  Despite the possibility that certain class members will not be fully reimbursed through the recall, the Court nonetheless finds that the recall weighs against a finding that a class action is a superior method of adjudication of the claims asserted in this case.

Based on the above, the Court finds that Plaintiffs have not demonstrated that this action meets the requirements of Rule 23(b)(3).  Accordingly, Plaintiffs' motion for class certification must be denied.

## III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  This burden can be met "by 'showing' -

that is, pointing out to the district court - that there is an absence of evidence to

support the nonmoving party's case." Id. at 325.  The party opposing summary

judgment may not rest upon mere allegations or denials, but must set forth

specific facts showing that there is a genuine issue for trial.  Krenik v. County of

Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## IV.     ANALYSIS

### A.     Express Warranty Claim

#### 1.     Daigle

Edward Daigle is a Minnesota resident, therefore Minnesota law controls

his claim for breach of express warranty.  Under Minnesota law, an express

warranty arises when a seller makes an affirmation about a product that becomes

part of the basis of the bargain between the parties.  Minn. Stat. § 336.2-313 (2010).

"To establish a warranty claim the plaintiff must basically prove: the existence of

a warranty, a breach, and a causal link between the breach and the alleged

harm."  Peterson v. Bendix Home Sys., Inc., 318 N.W.2d 50, 52-3 (Minn. 1982).

Daigle purchased a used 2004 Ford Freestar in May 2008 from OK Used

Cars.  (Carey Decl., Ex. 12 (Daigle Dep. at 60, 62, 84-85, 107; Exs. 4-6).)  Daigle

testified at his deposition that neither he or his wife saw any Ford advertisements

relating to the Freestar.  (<u>Id.</u>, Ex. 12 (Daigle Dep. at 67-68).)  Nor did they talk

with anyone at Ford before they bought the 2004 Freestar, or conduct any internet

research on the vehicle prior to purchase.  (<u>Id.</u> at 68-70, 71.)

When he purchased the Freestar in 2008, OK Used Cars provided a 6

month/6,000 mile warranty on the engine and the transmission.  (<u>Id.</u> at 83; Ex. 5.)

Daigle understood he could purchase an extended warranty, but he did not buy

one.  (<u>Id.</u> at 167.)  On April 16, 2009, Daigle brought the Freestar to Kenny's

Service Station in Bemidji after he noticed a change in the RPMs when he was

driving.  (<u>Id.</u> at 119-120.)  At that time, the transmission fluid was changed.  (<u>Id.</u>

at 120; Ex. 11.)  Ten days later, while driving the Freestar on the highway, Daigle

heard the engine rev and then the vehicle went into neutral.  (<u>Id.</u> at 125-26.)

Daigle coasted the van to the shoulder, where it came to a stop.  (<u>Id.</u> at 127.)  The

vehicle was towed to Kenny's Service Station, where he was told that the vehicle

had a major transmission problem.  (<u>Id.</u> at 139-140, 142.)  Daigle had the van

towed to Bob Lowth Ford for repair, where he was told the transmission had to

be replaced.  (<u>Id.</u> at 142-43.)  Daigle was charged $3,000 to replace the

transmission.  (<u>Id.</u> at 144; Ex. 17.)

Daigle's 2004 Freestar was covered by a New Vehicle Warranty when it

was originally sold.  (Kalis Aff., Ex. A (2004 Car and Light Truck Warranty

Guide).)  This warranty provided that "[d]uring this coverage period, authorized

Ford Motor Company dealers will repair, replace, or adjust all parts on your

vehicle that are defective in factory-supplied materials or workmanship." (Id. at

5.)  Such bumper to bumper coverage lasted for three years or 36,000 miles,

whichever occurred first.  (Id.)  Because Daigle purchased his Freestar in May

2008, the New Vehicle Warranty had already expired.  Plaintiffs argue that a

claim for breach of express warranty does not accrue until he discovered or

should have discovered Ford's breach - the refusal or inability to maintain the

vehicle as warranted.  Highway Sales, Inc., 559 F.3d at 787.  As applied here,

Plaintiffs argue the Freestar that Daigle purchased was defective at the time it

was first sold, but such defect did not manifest itself until after the term of the

New Vehicle Warranty had passed.  Plaintiffs argue that as they could not have

known of Ford's refusal to maintain the vehicle as warranted until after the

defect was discovered, the fact that the warranty had expired does not bar

Daigle's claim that Ford breached such warranty.

To accept such an argument, however, would render any warranty limited

in time/mileage meaningless.  As the Court recognized in Cannon Tech. v. Sensus

18

Metering Sys., 734 F. Supp. 2d 753, 763 (D. Minn. 2010):

> A plaintiff could always claim that a defect manifesting itself after the express-warranty period was endemic to the product on the date it was purchased, and hence the product was "defective" when bought.  Such a rule is non-sensical.

> Accordingly, even if [plaintiff] were correct that the [product] was "defective" when purchased, its express-warranty claim would still fail because that defect did not manifest itself until after the warranty period had ended.

See also Neuser v. Carrier Corp., No. 06-C-645-S, 2007 WL 484779, at *4-5 (W.D. Wis. Feb. 9, 2007) (finding that a limited warranty recognizes the inevitability of defects in the product sold).

The facts are undisputed that Daigle purchased his 2004 Freestar used and after the New Vehicle Warranty had expired.  Accordingly, any claim based on the New Vehicle Warranty has no merit.  See Liedtke v. Cloquet Serv. Ctr., 367 N.W.2d 117, 118 (Minn. Ct. App. 1985) (no claim where plaintiff did not notify or return vehicle until after the limited warranty had expired).[3]

### 2.      Genovese

James Genovese, a resident of Maryland, purchased a 2004 Freestar in

---

[3]It appears that Daigle relies solely on the New Vehicle Warranty for his breach of express warranty claim.  See Plaintiffs' Memorandum in Opposition to S.J. at 15-17.

January 2005 from Koons Ford, a Ford dealership in Maryland.  (Kalis ¶ 9.)  Prior

to buying the Freestar, Genovese recalls seeing a commercial concerning the

Freestar's five star crash rating and other advertisements.  (Carey Affidavit, Ex. 9

(Genovese Dep. at 131-32).)  He further testified that no one at Koons told him

anything that was not true.  (Id. at 134.)

When Genovese purchased the Freestar, it was covered by the same New

Vehicle Limited Warranty as Daigle's Freestar.  (Kalis Aff., Ex. A.)

Genovese testified that he understood the warranty did not cover defects

that occurred beyond the warranty period.  (Carey Aff., Ex. 9 (Genovese Dep. at

144-45).)  He was offered an extended warranty, but declined to purchase such a

warranty.  (Id. Ex. 10 (Genovese Dep. at 233-34).)  Thereafter, the Genoveses

drove the van for about 45,000 miles with no mechanical issues.  (Id. Ex. 9

(Genovese Dep. at 116).)  On November 15, 2007, Genovese's wife was driving

the Freestar when it lost all forward power.  (Id. at 41, 144-45.)  The van was

towed to an AAMCO transmission shop, where the transmission was replaced

for $2,400.  (Id. Ex. 11.)  Genovese was informed by the shop that the cause of the

transmission failure was the torque converter - that the internal splines were

stripped out.  (Id.)  After the transmission was replaced, Genovese drove the van

for another 50,000, after which he traded it in and received a $3,000 credit on the purchase of another vehicle.  (Id., Ex. 9 (Genovese Dep. at 118).)

Genovese appears to base his breach of express warranty claim on both the New Vehicle Warranty and upon advertisements he saw prior to purchasing the 2004 Freestar.  In Maryland, to prevail on an express warranty claim, a plaintiff must show that the good sold did not, at the time of sale, conform to the representations of the warranty.  Crickenberger v. Hyundai Motor Am., 944 A.2d 1136, 1143 (Md. 2008).  A plaintiff must also show a causal connection between the defect and his damages.  Id. at 1143-44.  Further, statements in advertising can give rise to an express warranty.  Gricco v. Carver Boat Corp., LLC, Civ. No. JFM-04-1854, 2005 WL 3448038, at *3 (D. Md. Dec. 15, 2005).  Genovese argues that he has presented evidence that the Freestar was defective when he purchased it, and that Ford warranted the vehicle was free of defects and advertised the vehicle had been given a five star crash rating.

Genovese testified that he saw Ford's advertisements as to the Freestar's five star crash ratings, and that he relied on the advertisements and his previous experience with Ford, trusting that the company would not sell him a defective vehicle.  (Carey Aff., Ex. 10 (Genovese Dep. at 233).)

21

For those reasons discussed above, Genovese, like Daigle, cannot rely on the New Vehicle Limited Warranty, as the warranty had expired on the date his Freestar's transmission failed given the fact that the vehicle had 45,000 miles on it at that time.  (Id., Ex. 9 (Genovese Dep. at 145).)

To the extent Genovese's express warranty claims are based on advertisements he saw concerning the Ford Freestar, Genovese also testified that the advertisements he is relying on are "the incessant five-star crash rating commercial or ads."  (Davis Aff., Ex. 10 (Genovese Dep. at 132).)  He did not testify that those commercials made express warranties against defects in the Freestar.

"[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."  Md. Code, Comm. Law art. § 2-313(2).  Absent evidence that Ford advertised that the 2004 Freestar was free of defects, particularly the torque converter, advertisements that the Freestar was safe and reliable are merely statements of opinions or commendation, which are not actionable. Gricco, 2005 WL 3448038, at *3 (citing Rock v. Oster Corp., 810 F. Supp. 665, 667 (D. Md. 1991).  See also, Rite Aid Corp. v. Levy-Gray, 876 A.2d 115, 126 (Md. Ct.

App. 2005) (finding that Maryland law requires an express warranty to include an affirmative statement of fact by the seller about the goods).

Accordingly, the Court finds that Ford is entitled to summary judgment as to Genovese's claim of breach of express warranty.

### 3. Caron

Henri Caron, a Georgia resident, purchased a used 2005 Freestar on January 15, 2007 from Duvall Ford in Jacksonville, Florida. (Carey Aff., Ex. 19 (HC00019).)  The car was sold by Ford to a dealer on March 25, 2005, and it was then sold to Enterprise Rental Car on March 29, 2005.  (Kalis Aff. ¶ 10.)  The Freestar was covered by the 2005 Car and Light Truck Warranty when it was first sold.  (Id. Ex. B.)  Like the 2004 New Vehicle Warranty, this warranty provided for bumper to bumper coverage for three years or 36,000 miles, whichever occurred first.  (Id. at 5.)  At the time Caron purchased the Freestar, it had been driven over 55,000 miles, therefore the New Vehicle Limited Warranty had expired.  (Carey Aff. Ex. 18 (Caron Dep. at 100), Ex. 19 (HC00019).)

Caron testified that when he purchased the Freestar, the salesman told him the Freestar was a good vehicle that would meet his family's needs.  (Id. Ex. 18 (Caron Dep. at 58, 59, 70 and 82).)  He also testified that he did not recall

receiving a written warranty on the Freestar, but that he was under the

impression he was getting a lifetime warranty as to any of the van's components

that would prevent the car from going from point A to point B.  (Id. at 67; 167-70.)

He further testified that before buying the 2005 Freestar, he relied on his previous

experience with Ford, Ford's reputation, and commercials to determine that Ford

manufactured good, solid-working vehicles and that the Freestar would be a

reliable vehicle.  (Id. at 57-58.)

Caron drove the Freestar for two and one half years without any problems.

(Id. at 99-101, 117, 132.)  On July 18, 2009, Caron was driving the Freestar to a

mall in Jacksonville, Florida with his wife and family, and was on a six lane state

highway when the engine started to rev and he felt the van was not accelerating

when he stepped on the gas.  (Id. at 99-100, 133-37, 142, 154.)  He got off the

highway and pulled over onto the shoulder of the exit ramp.  (Id. at 139-40.)

While doing so, Caron testified he had no trouble steering or braking.  (Id. at

141.)

The van was then towed to his home, and a few days later, was towed to

L&D Transmission, where the torque converter, pump and pump shaft filter

were replaced for $1,110.  (Id. 151, 177, 182.)  Thereafter, Caron began to

24

experience additional problems with the Freestar's transmission.  (<u>Id.</u> at 184.)  As

a result, he purchased a used GMC Yukon in December 2009.  (<u>Id.</u> at 198-99.)

Relying on the New Vehicle Warranty, Plaintiffs argue that Caron has

established a breach of express warranty claim under Florida law, which defines

an express warranty as "any affirmation of fact or promise made by the seller to

the buyer which relates to the goods and becomes part of the basis of the bargain

creates an express warranty that the goods shall conform to the affirmation or

promise."  F.S.A. § 672.313(a)(1); <u>State Farm Auto Ins. Co. v. Nu Prime Roll-A-</u>

<u>Way of Miami, Inc.</u>, 557 So.2d 107, 108 (Fla. App. 3 Dist. 1990).  Plaintiffs assert

that Ford promised the Freestar would operate free from defects in materials and

workmanship in the New Vehicle Warranty.  As noted above, however, that

warranty had expired by the time the transmission in Caron's Freestar

experienced problems.  Under Florida law, the fact that a defect did not occur

within warranty period is fatal to claim of breach of express warranty.  <u>See</u>

<u>Brisson v. Ford Motor Co.</u>, 349 Fed. App'x 433, 434 (11th Cir. Oct. 16, 2009).

Accordingly, to the extent Caron relies on the New Vehicle Warranty in his

breach of express warranty claim, such claim must be dismissed.

Plaintiffs further assert that under Florida law, representations made in

advertising can create an express warranty.  See Manheim v. Ford Motor Co., 201 So.2d 440, 443 (Fla. 1967).  Caron testified that Ford communicated in many media forms and that he relied upon Ford's advertisements, reputation, statements by Ford dealers and his previous experience with Ford in making the decision to purchase the 2005 Freestar.  He also testified that he could not remember any commercial in particular, but remembers them in general, and that they gave him the impression that the Freestar was a good, solid-working vehicle.  (Carey Aff., Ex. 18 (Caron Dep. at 57-58).)

Florida law provides that  "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the does not create a warranty."  F.S.A. § 672.313(2).   Thus, statements such as "good" or "solid-working" are nothing more than the seller's opinions or commendation of the goods.  See, e.g., Lee v. C & P Serv. Corp. 363 So.2d 586, 588 (Fla. Ct. App. 1978).  Cf State Farm Ins. Co. V. Nu Prime Roll-A-Way of Miami, 557 So.2d 107, 108 (Fla. Ct. App. 1990) (noting that representations as to specifications and capacity in an advertisement may constitute an express warranty).   As Caron cannot point to any specific representation made by Ford with respect to the transmission or torque converter of a 2005 Freestar, his claim

for breach of express warranty has no merit and Ford is entitled to summary

judgment.

### B.    Implied Warranty Claim

#### 1.    Daigle

As set forth in Section II (C)(1)(b) above, Minnesota law provides that an

implied warranty of merchantability may be limited or disclaimed, as long as the

limitation or disclaimer is in writing, conspicuous and mentions merchantability.

Transp. Corp. of Am., Inc., 30 F.3d at 958-59.  As a result, Daigle's claim of breach

of implied warranty under Minnesota law is limited to the life of the New Vehicle

Warranty - which is three years or 36,000 miles, whichever occurs first.  It is

undisputed that Daigle purchased his 2004 Freestar after the New Vehicle

Warranty had expired, therefore his claim of breach of implied warranty has no

merit and Ford is entitled to summary judgment.

#### 2.    Genovese

As set forth in Section II (C)(1)(b), claims for breach of implied warranty

under Maryland law are subject to a four year statute of limitation, which begins

to run at the time delivery is tendered.  See Washington Freightliner, Inc., 719

A.2d at 545; In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig., 155 F.

Supp.2d 1069, 1099 n.34 (S.D. Ind. 2001) (finding that under Maryland law, statute of limitation for breach of implied warranty "will always start to run against claims based on implied warranty from the time when delivery of the goods is tendered.")   Here, Genovese purchased his 2004 Freestar in January 2005, and this action was filed in November 2009.  Therefore, he is barred from bringing a claim for breach of implied warranty pursuant to Maryland law.  Ford is thus entitled to summary judgment on this claim as well.

### 3.    Caron

Florida law requires privity between the manufacturer and the buyer before a buyer can bring a claim for breach of implied warranty.  <u>Rentas v. DaimlerChrysler Corp.</u>, 936 So.2d 747 (Fla. Ct. App. 2006).  Lack of privity between the buyer and the manufacturer precludes a claim for breach of implied warranty.  <u>See</u> <u>David v. Am. Suzuki Motor Corp.</u>, 629 F. Supp. 2d 1309 (S.D. Fla. 2009).  Caron purchased a used 2005 Freestar from Duval Ford, not Ford Motor Company.  Because there is a lack of privity between the parties with respect to Caron's purchase of his Freestar, Ford is entitled to summary judgment with respect to Caron's claim of breach of implied warranty.

### C.    Unjust Enrichment Claim

### 1.    Daigle

To establish an unjust enrichment claim under Minnesota law, the claimant must show that the defendant has knowingly received or obtained something of value for which the defendant "in equity and good conscience" should pay. Klass, 190 N.W.2d at 494-95.  For example, an unjust enrichment claim could lie where the defendant acted "illegally or unlawfully."  First Nat'l Bank v. Ramier, 311 N.W.2d 502, 504 (Minn. 1981).  An unjust enrichment claim has also been recognized where the defendant's conduct in retaining a benefit is morally wrong.  Cady v. Bush, 283 Minn. 105, 166 N.W.2d 358, 361-51(1969); Hartford Fire Ins. Co. v. Clark, 727 F. Supp.2d 765, 777 (D. Minn. 2010).  A claim for equitable relief may only stand, however, when no other legal remedies are available to the plaintiffs.  Drobnak v. Andersen Corp., 561 F.3d 778, 787 (8th Cir. 2009) (listing cases).

Daigle purchased a used Freestar from OK Used Cars.  Plaintiffs have put forth no evidence that Ford benefitted from the sale of a used vehicle, or more particularly, Daigle's purchase of a used Freestar[4].  Ford is thus entitled to

---

[4]Plaintiffs argue that by not disclosing the defect to the torque converters, thousands of the Class Vehicles were purchased at a price higher than they would have paid if the defect was known to the purchaser.  Plaintiffs have not put forth any evidence to support this assertion.  In addition, Plaintiffs argue that Ford required its dealers to use Ford parts in repairing the

summary judgment as to Daigle's unjust enrichment claim.  See Heimbach v.

Riedman Corp., 175 F. Supp. 2d 1167, 1180 (D. Minn. 2001) (unjust enrichment

claim under Minnesota law requires plaintiff to show that defendant received

something of value).

### 2. Genovese

Under Maryland law, a claimant may not assert a claim for unjust

enrichment where the subject matter of the claim is covered by an express

contract between the parties.  Dashiell, 747 A.2d at 607.  Plaintiffs respond that

this Court has already held that a plaintiff may plead in the alternative, therefore

summary judgment is not appropriate even though the record demonstrates that

an express contract exists that covers the same subject matter.  In support,

Plaintiffs cite to the decision in Raceredi Motorsports, LLC v. Dart Machinery,

LTD, 640 F. Supp.2d 660, 666 (D. Md. 2009).  That decision is inapposite, as it

addressed a motion to dismiss, not one for summary judgment.

Where it is undisputed that an express contract exists covering the subject

matter of the unjust enrichment claim, the unjust enrichment claim must be

---

defective torque converters when the defects surfaced, therefore it is reasonable to assume that when Daigle's transmission was repaired, Ford parts were used.  Plaintiffs have not, however, submitted evidence to support the assertion that Ford parts were, in fact, used.

dismissed.  See, e.g., Dashiell, 747 A.2d at 607 (granting summary judgment on

unjust enrichment claim where existence of express contract governing subject

matter was not contested); Clark Const. Group Inc. v. Allglass Sys., Inc., No. Civ.

A. DKC2002-1590, 2004 WL 1778862, at *11 (D. Md. Aug. 6, 2004) (same).  Here,

the parties do not dispute that an express contract, the New Vehicle Warranty,

covers the subject matter of Genovese's unjust enrichment claim.  Accordingly,

Ford is entitled to summary judgment as to this claim.

### 3.      Caron

Under Florida law, the elements of an unjust enrichment claim are: a

benefit conferred on the defendant; appreciation by the defendant of such benefit;

and acceptance and retention of such benefit by the defendant under such

circumstances that it would be inequitable for the defendant to retain the benefit

without paying value.  Nautica Int'l, Inc., 5 F. Supp. 2d at 1341-42. Caron, like

Daigle, purchased a used Freestar.  There is no evidence before the Court that

Ford benefitted from Caron's purchase of a used vehicle, therefore summary

judgment on this claim is appropriate as well.

**IT IS HEREBY ORDERED:**

1.      Plaintiffs' Motion to Certify a Class [Doc. No. 73] is DENIED; and

2.      Defendant's Motion for Summary Judgment [Doc. No. 64] is

GRANTED.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Date:   July 31, 2012


s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court